1
2
3
4
5
6
7
8
9
10

HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12
13
14
15
16
17

RAYMUND McDERMOTT and PHYLLIS
McDERMOTT, a married couple,

                    Plaintiffs,

        v.

LIFE INVESTORS INSURANCE
COMPANY OF AMERICA, a Life Insurance
Entity,

                    Defendant.

Case No. C06-5344RBL

ORDER DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

18      THIS MATTER is before the Court on opposing Motions for Summary Judgment. Plaintiffs Raymund

19 and Phyllis McDermott seek a ruling as a matter of law that their claim is covered by Defendant Life Investors

20 Insurance of America's (Life Investors) long-term insurance care policy. [Dkt. #29].   Defendant, Life

21 Investors, moves for summary judgment seeking dismissal of plaintiffs' coverage claim. [Dkt. #34].   For

22 reasons explained below, the Court **DENIES** the plaintiffs' motion [Dkt. #29] and **GRANTS** the defendant's

23 motion [Dkt. #34].

24                          **FACTUAL BACKGROUND**

25      On October 31, 2000, Mrs. McDermott was diagnosed with Mild Cognitive Impairment.

26 Individuals with this impairment develop Alzheimer's Disease at a rate higher than that of the population at

27 large.  Mr. McDermott assumed the role of caregiver for his wife.  As Mrs. McDermott's condition

28 deteriorated, Mr. McDermott took her to Canterbury Gardens first for day care then for respite care, and

1    eventually for full-time residential care.  Canterbury Gardens is a self-proclaimed "Alzheimer's Special

2    Care Residence."  Exh. B to Plaintiff Decl. (Dkt. #32).  Since June 14, 2005, Mrs. McDermott has been a

3    resident of Canterbury Gardens.

4        In 1997, the McDermotts purchased a long-term care insurance policy for Mrs. McDermott from

5    Bankers United Life Assurance Company, predecessor company to Life Investors.  The policy applied for

6    was limited to Nursing Home Benefits.  The McDermotts expressly rejected Home Health and Community

7    Rider Benefits which would have provided more expansive coverage, to include boarding homes, assisted

8    living facilities, and other community care facilities.  Redacted Exh. A.1 to Weurdig Aff. at 2 (Dkt. #36).

9    The parties agree that Canterbury Gardens is licensed by the State of Washington as a boarding home and

10   is not a "nursing home" as that term is defined in the 1997 policy purchased by plaintiffs.

11       In 1999, Life Investors converted the McDermott policy to a tax qualified long-term care insurance

12   policy.  The conversion was not accompanied by a change in premium and, according to defendant, was

13   not intended to expand benefits.  The rider did, however, change the definition of "nursing home" to

14   include a reference to "Alzheimer's Disease Facility."[1]  That additional reference gives rise to plaintiffs'

15   contention that Canterbury Gardens qualifies as a "nursing home" and that Mrs. McDermott's care is

16   therefore covered under the 1999 policy.

17       The policy in question provides benefits/coverage for Basic Nursing Home Care, referred to in the

18   policy as "Nursing Home Basic Benefits."  The maximum benefit is $100 per day with periodic escalators

19   built in at 5% annually.  The insurer promises to "pay the actual charges incurred for each day you are

20   confined in a Nursing Home, up to the maximum Daily Benefit shown in the Schedule."  Exh. 3 to

21   Weurdig Aff. (Dkt. #34).  The 1999 policy defines nursing home as:

22           A facility, or part of a facility which:
             (1) is licensed by the state as a nursing home or an Alzheimer's Disease
23           facility; and
             (2) is engaged in providing, in addition to room and board accommodations,
24           nursing care and related services on a continuing inpatient basis; and
             (3) provides, on a formal prearranged basis, a Nurse who is on duty or on
25           call at all times; and
             (4) has a planned program of policies and procedures developed with the
26           advice of, and periodically reviewed by, at least one Physician; and

27   ─────────────────

28       [1]Defendant contends that the reference to "Alzheimers Disease Facility" was inserted as an accommodation to those
     facilities meeting the definition of "nursing home" but which operate in states where facilities are licensed as Alzhemier Disease
     Facilities and not as "nursing homes."

1            (5) maintains a clinical record of each patient.

2    Exh. 3 to Weurdig Aff. at 7 (Dkt. #34).

3            In early 2005, Mr. McDermott inquired in writing as to whether Canterbury Gardens met the

4    "Nursing Home" definition in the policy.  In response to a prior verbal request from defendant's claims

5    department, Mr. McDermott included a copy of Canterbury Gardens' license to operate issued by the State

6    of Washington.  Following a review of the policy, the facility license and relevant licensing regulations, Life

7    Investors informed Mr. McDermott that Canterbury Gardens did not qualify as a nursing home under the

8    1999 policy.  Life Investors did refer Mr. McDermott to facilities nearby that would qualify as "nursing

9    homes" under the policy.

10           According to Life Investors, Canterbury Gardens does not qualify as a "nursing home" under the

11   policy for at least four reasons: (1) it is not licensed by the State of Washington as a nursing home; (2) it is

12   not licensed by the State of Washington as an Alzheimer's Disease Facility; (3) it is not authorized by state

13   law to offer nursing care and related services "on a continuing impatient basis;" and (4) it is licensed as a

14   "boarding home" which the policy definition of "nursing home" specifically excludes.

15           Notwithstanding its determination that Canterbury Gardens did not qualify as a "nursing home"

16   under the policy, in order "to resolve this disputed matter," Life Investors agreed to pay for $2,100 for 21

17   days of respite care at $100 per day.  The benefit was paid to plaintiffs, who did not waive any claim in

18   order to receive the payment.  Life Investors informed plaintiffs that no further benefits would be paid

19   because Canterbury Gardens did not satisfy the requirements of the policy's Nursing Home definition.

20   Exh. 17 to Weurdig Aff. (Dkt. #34).  This lawsuit ensued.

21           Plaintiffs claim that the 1999 policy language, including reference to "Alzheimer Disease Facility"

22   renders the definition of "nursing home" ambiguous.  They claim that their reasonable interpretation of the

23   policy language should be adopted by the Court and coverage thereby extended to Mrs. McDermott's care

24   at Canterbury Gardens.

25

26

27

28

# DISCUSSION

## I.    Summary Judgment

### A.    Summary Judgment Standard

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party is entitled to summary judgment if, after satisfying its initial burden, the non-moving party fails to present specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable finder of fact could return a decision in the nonmoving party's favor. *Triton Energy*, 68 F.3d at 1220.

### B.    Interpretation of Insurance Contracts

Insurance policies are construed as contracts in Washington State.  RCW 48.01.040 (defining insurance as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies").  The interpretation of insurance contracts is a question of law, *Weyerhaeuser Co. v. Aetna Cas. and Sur. Co.*, 123 Wash. 2d 891, 897 (1994), and the standard for interpretation is well settled:

> In Washington, insurance policies are construed as contracts.  An insurance policy is construed as a whole, with the policy being given a "fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance."  If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists.  If the clause is ambiguous, however, extrinsic evidence of the intent of the parties may be relied upon to resolve the ambiguity.  Any ambiguities remaining after examining applicable  extrinsic evidence are resolved against the drafter-insurer and in favor of the insured.  A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

*Weyerhaeuser Co. v. Commercial Union Ins.*, 142 Wash. 2d 654, 665-66 (2000) (citations

1   omitted).  In construing the insurance contract as a whole, the specific terms control generic terms.  *See*

2   *McGary v. Westlake Investors*, 99 Wash. 2d 280, 286 (1983); *Wash. Local Lodge 104 of the Int'l Bhd. of*

3   *Boilermakers v. Int'l Bhd. of Boilermakers*, 28 Wash. 2d 536, 541 (1947); Restatement Second of

4   Contracts, § 203(c).  When there is ambiguity about the meaning of a policy term, parol evidence is

5   admissible only to show the situation of the parties, not to modify or contradict the written contract's

6   terms, except in cases involving fraud, accident, or mistake.  *Berg v. Hudesman*, 115 Wash. 2d 657, 669

7   (1990).

8                        **1.        The Definition of "Nursing Home" Under the Policy.**

9           Plaintiffs contend they bought a long-term care insurance policy for Mrs. McDermott that by 1999

10  purported to cover care received at an Alzheimer's Disease Facility.  The parties acknowledge that Mrs.

11  McDermott has Alzheimer's and qualifies for benefits at a facility which meets certain policy requirements.

12  The facility where Mrs. McDermott receives her care treats patients with Alzheimer's and other forms of

13  dementia exclusively.  Decl. of Cyndie Bryant, (Dkt. #30).  Moreover, the parties agree that Washington

14  only licenses nursing homes, boarding homes, and adult family care homes, and that all three types of

15  facilities may provide dementia care.  See RCW 18.20.320(1)(d) (boarding homes); Exh. D to Wolf Aff. at

16  14 (Dkt. #34); Exh. C to Ammons Decl. at 14 (Dkt. #39).  Plaintiffs conclude that Canterbury Gardens

17  qualifies as an Alzheimer's Disease Facility because it meets most, if not all, of the essential criteria

18  established by the policy definition and to the extent it does not, the requirement is unreasonable and

19  therefore unlawful and unenforceable.

20          Defendant acknowledges that Canterbury Gardens is licensed by the State and that it is authorized

21  to care for Alzheimer patients/residents.  It acknowledges that, unlike some licensed boarding homes,

22  Canterbury Gardens has specific authority to lock doors and confine patients/residents who might be

23  inclined to wander.  Finally, defendant does not dispute that Canterbury Gardens has a nurse on duty 24

24  hours a day, seven days a week and that it maintains a clinical record of each person staying there.

25  Nevertheless, defendant rejects any assertion that Canterbury Gardens meets the definition of "nursing

26  home" under the 1999 policy.

27          Under Washington law, a facility licensed as a "boarding home" cannot provide nursing care to its

28  residents on a continuous inpatient basis.  Instead, intermittent care can be provided at a boarding home

ORDER
Page - 5

1    under certain limited circumstances.  RCW 18.20.020(7); 18.20.160.  There is no dispute about this
2    significant point and it proves fatal to plaintiffs' claim.

3            The definition of "nursing home" has a licensing component deferring to the regulatory scheme of
4    each state.  It also has a minimum services requirement that identifies all services that must be provided by
5    the health care provider to meet the policy definition requirements.  Finally, the policy defines what is not a
6    "nursing home."  The Court can certainly understand and sympathize with plaintiffs' confusion over the
7    apparent mismatch between what the policy allows and what the state provides by way of license
8    designation.  While other states may have a specific license for Alzheimer's Disease Facility, Washington
9    does not.  The Court also recognizes that Canterbury Gardens provides much more by way of services than
10   contemplated by state law descriptions of boarding homes and other facilities not qualified as licensed
11   nursing homes.  See RCW 18.51.010.  It provides an on-duty nurse and planned program of policies and
12   procedures which, if not developed with the advice of a Physician, is periodically reviewed by a Physician.
13   It also maintains a clinical record of each patient/resident.  The Court cannot however, escape the clear
14   limitation imposed by law upon Canterbury Gardens' ability to provide continuous nursing care.  The
15   policy definition for "nursing home" benefits requires the facility, no matter its license designation, to
16   provide continuous nursing care.  By law, Canterbury Gardens cannot meet that requirement.  Canterbury
17   Gardens cannot therefore fulfill the requirements of either a "nursing home" or Alzheimer's Disease
18   Facility as provided by the policy.

19                                            **CONCLUSION**

20           In 1997 the McDermotts bought insurance for long-term health care benefits provided at a "nursing
21   home."  As of the date of purchase, the McDermotts clearly understood that a facility like Canterbury
22   Gardens was not a "nursing home" under the policy.  While the 1999 modification may have created some
23   ambiguity concerning whether Canterbury Gardens was licensed by the State of Washington as an
24   Alzheimer's Disease Facility and although the services provided by Canterbury Gardens correspond to
25   some of the minimal requirements imposed by the subject policy, one essential qualification cannot be met.
26   Canterbury Gardens is prohibited by law from providing continuous inpatient nursing care.  On that fact
27   there is no dispute.  No reasonable interpretation of the policy can write the requirement out of the policy
28   nor can any reasonable interpretation of the facts satisfy the plain meaning of the policy language.  The

1    continuous inpatient nursing requirement is not ambiguous, is not a gatekeeper provision, as that term is

2    used by plaintiffs, and more importantly, is not unreasonable.

3         The subject policy does not provide coverage for long-term or respite care provided at Canterbury

4    Gardens and defendant's motion for summary judgment [Dkt. #34] is **GRANTED**.  Plaintiffs' motion for

5    summary judgment [Dkt. #29] is **DENIED**.

6         **IT IS SO ORDERED.**

7         Dated this 1st day of November,  2007.

8

9

10

11    RONALD B. LEIGHTON
      UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28